Freeman COLEMAN

v.

Honorable Leonard YOKUM, District Attorney, 21st Judicial District, State of Louisiana.

Civ. A. No. 69-32.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Dec. 2, 1970.

Sylvia Roberts, Baton Rouge, La., for plaintiff.

Leonard Yokum, Dist. Atty., Joseph H. Simpson, Asst. Dist. Atty., Twenty-First Judicial District, Amite, La., for defendant.

WEST, Chief Judge:

Federal subject matter jurisdiction has been alleged and exists in this matter under the Civil Rights Act, 28 U.S.C.A. § 1343, and 42 U.S.C.A. § 1983.

Since a statutory three judge court has concluded that Article 580 of the Louisiana Code of Criminal Procedure, which was under attack by the plaintiff herein, is not unconstitutional, see Coleman v. Yokum, 320 F.Supp. 50, E.D.La. 1970), this matter is now before this Court to determine whether or not the plaintiff, Freeman Coleman, has, in fact, been denied his right to a speedy trial as guaranteed by the Sixth Amendment to the Constitution of the United States.

Over ten years have passed since the complainant, Freeman Coleman, was arrested, after having been indicted for murder, and he has not yet been tried. As the transcript of proceedings before this Court on May 6, 1969, will show, this Court indicated that the passage of ten years between indictment and trial raised a strong presumption that complainant's right to a speedy trial had been denied. However, a careful study of the record and of the applicable law in this case leads to a contrary conclusion.

The complainant's history of incarceration during this ten year period follow-

ing indictment, as shown by the record, may be outlined as follows:

November 13, 1959—Arrest after grand jury indictment for murder.

January 15, 1960—Date set for arraignment, but arraignment postponed due to illness of petitioner's retained counsel.

February 8, 1960—Date set for arraignment, but arraignment was again postponed. The record does not indicate the reason for the postponement, but it was so short as to hardly warrant attention.

February 12, 1960—Again set for arraignment, and again arraignment was postponed in order to allow plaintiff's attorney, Mr. Williams, to withdraw as counsel and to allow Douglas Nesom and Burrell J. Carter, newly court appointed counsel, to prepare; petitioner was given until March 18, 1960, to file responsive pleadings.

March 18, 1960—Petitioner was arraigned and entered a guilty plea which the State refused to accept. A plea of not guilty was entered by the Court. The case was assigned for trial on April 25, 1960, and petitioner was given until March 25, 1960 to file additional pleadings.

March 25, 1960—Petitioner filed a motion to quash the indictment on the ground that Negroes had been systematically excluded from the general and grand jury venires.

April 14, 1960—The motion to quash was heard and denied and petitioner filed an application for a hearing to determine his mental condition.

May 4, 1960—A lunacy commission, appointed pursuant to petitioner's application, reported that petitioner was mentally incapable of proceeding in that he was unable to assist counsel in his defense and recommended a formal criminal commitment.

May 12, 1960—The state district court ordered petitioner committed to the criminal ward of the East Louisiana State Hospital at Jackson, Louisiana.

July 11, 1961—East Louisiana State Hospital reported that petitioner was sane and able to stand trial.

July 19, 1961—The state district court ordered petitioner transferred from the hospital to St. Helena Parish prison to await trial.

November 28, 1962—Petitioner's counsel applied for a hearing on petitioner's mental condition and asked for the appointment of a second lunacy commission which was appointed on December 12, 1962. Petitioner also filed motions to quash the general, grand and petit jury venires on this date.

January 11, 1963—The lunacy commission made its report which stated that petitioner was not capable of standing trial and recommended that he be recommitted to the East Louisiana State Hospital and that he should remain there until he could assist counsel in his defense.

January 14, 1963—Petitioner was recommitted to Jackson.

February 12, 1965—Petitioner was discharged from East Louisiana State Hospital and returned to the jurisdiction of the state court.

April 20, 1965—Motion by Miss Sylvia Roberts to enroll as counsel of record. It should be noted that there is some dispute over the date, terms, and conditions of Miss Roberts' representation. But this court finds that Miss Roberts was contacted by the petitioner sometime prior to April 20, 1965, that she communicated with petitioner's appointed counsel who offered to pay her to take the case, and that she thereafter had herself appointed by the court.

April 26, 1965—Petitioner, through Miss Roberts, applied for a bill of particulars and requested a preliminary hearing.

June 17, 1965—Petitioner again moved to quash the indictment on the

ground that Negroes had been systematically excluded from the several jury venires and also moved for a change of venue.

November 8, 1965—Petitioner's motions were heard and denied; petitioner subsequently applied to the Louisiana Supreme Court for a writ of certiorari and prohibition.

March 11, 1966—The Louisiana Supreme Court denied the application for writs on the basis that petitioner had an adequate remedy by appeal in the event of conviction. This memorandum decision was reported as State v. Coleman, 248 La. 1028, 183 So.2d 651 (1966).

September 5, 1966—The district attorney dismissed the first indictment against petitioner.

September 15, 1966—Petitioner was indicted for the second time by the grand jury.

November 14, 1966—Petitioner was in court to be arraigned, but Miss Roberts, alleging that she had just learned of the second indictment, asked the court to postpone the arraignment.

December 12, 1966—Petitioner asked for a further delay in arraignment, until January 5, 1967, in order to file additional motions. This was granted, and on the same day petitioner filed a motion to quash the second indictment on the ground of systematic exclusion of Negroes.

December 31, 1966—Petitioner filed a motion for a thirty day continuance from January 5, 1967, the date upon which the motion was to be heard, in order to locate witnesses; this was granted and February 9, 1967, was the date set for hearing the motion to quash. This date was later replaced by the date of February 16, 1967, because of the illness of the clerk of court.

February 16, 1967—Hearing on the motion to quash was not held as scheduled because Miss Roberts had, shortly before this time, been subpoenaed to appear before the East Feliciana Grand Jury on this date, and would be unavailable for the hearing.

No subsequent date for hearing was ever requested by complainant nor was a new date set by the Court. Shortly after this date, the then district attorney, Duncan Kemp, Esquire, died.

April 1, 1968—Mr. Yokum, defendant herein, appointed to fill the unexpired term of the deceased Mr. Kemp.

May 16, 1968—The Court ordered petitioner back to Jackson on the motion of the assistant district attorney.

July 5, 1968—Petitioner filed a writ of habeas corpus in the State Court.

February 24, 1969—Petitioner filed the present complaint in this Court to prevent his trial on March 10, 1969.

An examination of this record reveals that the delays complained of by the plaintiff simply cannot be attributable to the District Attorney or to the State. Even if the plaintiff here is given the benefit of every doubt, the total delay which might conceivably be charged to the District Attorney does not exceed the three year period allowed in Article 578 (1) of the Louisiana Code of Criminal Procedure, which Article is not under attack in this suit, for the trial of capital offenses.

■ Petitioner Coleman argues that Article 61 of the Louisiana Code of Criminal Procedure gives the District Attorney "entire charge and control of every criminal prosecution instituted or pending in his district," and that it was because of this exclusive control over the docket that he was unable to have his motion to quash set for a hearing. He concludes, therefore, that the delay caused by the failure of the Court to hear his motion to quash must be attributable exclusively to the District Attorney.

This contention is totally without merit. Article 17, the predecessor of Article 61 of the Louisiana Code of Criminal Procedure, which gave the District Attorney control over prosecutions, was qualified in 1940 by the Supreme Court of Louisiana in State v. Frith, 194 La. 508, 194 So. 1 (1940). In that case the Louisiana State Supreme Court said that the trial judge erred in rejecting defendant's request that his case be set for trial at the earliest possible date on the ground that the District Attorney had exclusive control over the criminal docket. The Court held that Article 17, conferring control over the docket on the District Attorney, had to be read in connection with Article 314, now Article 702 of the Louisiana Code of Criminal Procedure, which allows the Court to set a criminal case for trial upon motion of the defendant. The *Frith* rule was codified in Article 702 which says:

> "*Cases* shall be set for trial by the court on.motion of the state, and *may be set for trial on motion of the defendant.*" (Emphasis added)

█ The major delay complained of here was preceded by a motion to quash filed by petitioner herein, twice set for hearing at the request of the State, and twice continued by the Court at petitioner's request. Article 702 of the Louisiana Code of Criminal Procedure gives the defendant in a criminal case authority to set cases for trial. And Rule IX, Section 2, of the Twenty-First Judicial District Court, provides that "Motions and exceptions may be fixed in the same manner as provided for in Section 1, [by oral or written motion] or by the Clerk of Court at the written request of any party." Thus it would have been very easy for Freeman Coleman, through his counsel, to obtain a hearing on his motion. His failure to do so clearly amounts to a waiver of any right to now object. The delay was occasioned entirely by Coleman and his extremely able counsel who requested the delays involved and who failed to take any of the steps available to them to bring their motion on for hearing. It was they, and

not the District Attorney, who on two prior occasions requested continuances in the hearing of the motion to quash. There is simply no evidence to indicate that the District Attorney was in any way responsible for the delays complained of.

The other primary reason for such a long delay in this case was the necessity for several examinations and hearings on the competency of Mr. Coleman to stand trial. Article 579 of the Louisiana Code of Criminal Procedure states that time is interrupted when a defendant "cannot be tried because of insanity" and there is no contention that such an interruption is either unconstitutional or uncalled for in this case.

█ It is admitted that the passage of ten years, by itself, raises a question as to a possible denial of the right to a speedy trial. But the mere passage of time is not enough to constitute a denial of the Sixth Amendment right to a speedy trial. United States v. DeLeo, 422 F.2d 487 (CA 1–1970), cert. denied 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970) specifically rejected such an approach to the right to a speedy trial. And as stated in United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966):

> "We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the

ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances * * *.' * * * '[T]he essential ingredient is orderly expedition and not mere speed.' "

The right to a speedy trial is "relative" in that, depending upon the procedural safeguards utilized by the accused or on his behalf, the same stated period of time between institution of prosecution and trial might in one case violate the right while not violating it in another.

In conclusion, this Court finds that the delay complained of here was not (1) undue or oppressive, (2) did not cause anxiety and concern accompanying public accusation—if anything this defendant was obviously concerned over the possibility of conviction and not over the delay in clearing his good name—and (3) did not impair the ability of the accused to defend himself. The only prejudice complained of by petitioner is the possible inability of procuring as witnesses three of the psychiatrists who first examined him. But the State has indicated that these men, though presently out of state, are in fact available and will be produced at the trial of Mr. Coleman.

For these reasons, the injunctive relief sought by complainant is denied, and judgment will be entered accordingly.